# Exhibit A

**FILED**
**06-28-2024**
**Clerk of Circuit Court**
**Rusk County, Wisconsin**
**2024CV000066**

STATE OF WISCONSIN             CIRCUIT COURT             RUSK COUNTY

---

**CENTERLINE ARCHITECTURAL SUPPLY, LLC,**
Registered Agent: Kyle Czekalski
N3840 2nd Street
Weyerhaeuser, Wisconsin 54895-4424

      Plaintiff,

and

**RCL SERVICES, LLC,**
Registered Agent: Kyle Czekalski
N3840 2nd Street
Weyerhaeuser, Wisconsin 54895-4424,

      Involuntary Plaintiff.

v.

**RNA REAL ESTATE, LLC,**
Registered Agent: Frank Wagenbauer
1100 Barnett Road
Ladysmith, Wisconsin 54848,

      Defendant.

Case No. 24-CV- _____
Case Code No. 30303

---

## SUMMONS

---

THE STATE OF WISCONSIN, To each person named above as a Defendant:

      You are hereby notified that the plaintiff named above has filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

      Within twenty (20) days of receiving this Summons, you must respond with a written answer, as that term is used in Chapter 802 of Wisconsin State Statutes, to the Complaint. The

Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to this Court, whose address is:

> Clerk of Circuit Court
> Rusk County Courthouse
> 311 Miner Avenue East, Suite L350
> Ladysmith, WI 54848

and to Matthew S. Mayer, Plaintiff's attorney, whose address is:

> WELD RILEY, S.C.
> 500 Third Street, Suite 800
> P.O. Box 479
> Wausau, WI  54402-0479

You may have an attorney help or represent you.

If you do not provide a proper answer within twenty (20) days, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

DATED this 28th day of June 2024.

**WELD RILEY, S.C.**
Attorneys for Plaintiff, Centerline Architectural Supply, LLC

BY:   Electronically signed by Matthew S. Mayer
MATTHEW S. MAYER
State Bar No. 1001237
EVAN M. MAYER
State Bar No. 1122526

ADDRESS:
500 Third Street, Suite 800
P.O. Box 479
Wausau, WI 54402-0479
715.845.8234 – telephone
715.848.1085 – facsimile
mmayer@weldriley.com

**FILED**
**06-28-2024**
**Clerk of Circuit Court**
**Rusk County, Wisconsin**
**2024CV000066**

STATE OF WISCONSIN        CIRCUIT COURT        RUSK COUNTY

---

**CENTERLINE ARCHITECTURAL SUPPLY, LLC,**
Registered Agent: Kyle Czekalski
N3840 2nd Street
Weyerhaeuser, Wisconsin 54895-4424

       Plaintiff,

and

**RCL SERVICES, LLC,**
Registered Agent: Kyle Czekalski
N3840 2nd Street
Weyerhaeuser, Wisconsin 54895-4424,

       Involuntary Plaintiff.

                                    Case No. 24-CV-_____

v.                                        Case Code No. 30303

**RNA REAL ESTATE, LLC,**
Registered Agent: Frank Wagenbauer
1100 Barnett Road
Ladysmith, Wisconsin 54848,

       Defendant.

---

## COMPLAINT

---

     NOW COMES Plaintiff, Centerline Architectural Supply, LLC, as a member and on behalf of Involuntary Plaintiff, RCL Services, LLC, by and through its attorneys, Weld Riley, S.C. by Matthew S. Mayer and Evan M. Mayer, and, as and for its Complaint against Defendant, RNA Real Estate, LLC, alleges and shows to the Court as follows:

1.      Plaintiff, Centerline Architectural Supply, LLC (hereinafter, "Centerline"), is a Wisconsin limited liability company with the registered agent being Kyle Czakalski, N3840 2nd Street, Weyerhaeuser, Wisconsin 54895-4424.

2.      Involuntary Plaintiff, RCL Services, LLC (hereinafter, "RCL Services"), is a Wisconsin limited liability company with the registered agent being Kyle Czakalski, N3840 2nd Street, Weyerhaeuser, Wisconsin 54895-4424. RCL is being joined pursuant to Wis. Stat. § 803.03 as a necessary party for a just and complete adjudication.

3.      Defendant, RNA Real Estate, LLC (hereinafter, "RNA") is a Wisconsin limited liability company with the registered agent being Frank Wagenbauer, 1100 Barnett Road, Ladysmith, Wisconsin 54848.

4.      RCL Services has two (2) members, each of whom possess a fifty percent (50%) interest.

5.      The two (2) members of RCL Services are Centerline Architectural Supply, LLC and Rieder Noram, Inc.

6.      Centerline is bringing this derivative action as a member of RCL Services to protect RCL Services' rights and Centerline's rights, as a member of RCL Services, because RCL Services refuses to act to protect its contractual rights and faces the threat of bankruptcy.

7.      Centerline has standing to bring a derivative action because it has been a member of RCL Services since its inception and continues to be a 50% member.

8.      Centerline will fairly and adequately represent the interests of RCL Services in enforcing and protecting RCL Services' rights.

9.      On or about January 1, 2022, RNA entered into a written Lease Agreement (hereinafter, "the Lease") with RCL Services, as tenant, for approximately 75,000 square feet of

warehouse/office space located in the building commonly known as 1100 Barnett Road, Ladysmith, Wisconsin (hereinafter, "the Premises"). A copy of the Lease is attached hereto as Exhibit A.

10.     On or about January 1, 2022, RCL Services began to occupy the Premises in accordance with the Lease.

11.     Accordingly, throughout the course of the Lease, RCL Services has installed trade fixtures and equipment on the Premises relevant to operating its business as a custom concrete panel fabricator. A list of the trade fixtures and equipment is attached hereto as Exhibit B.

12.     Section 13.1 of the Lease states, *inter alia*, "Notwithstanding the foregoing, all trade fixtures, lighting fixtures and signs, whether by law deemed to be a part of the realty or not, installed by Tenant at any time or anyone claiming under Tenant, shall remain the property of Tenant or persons claiming under Tenant and may be removed by Tenant or anyone claiming under Tenant at any time or times during the Term of this Lease."

13.     RNA is preventing RCL Services from accessing its trade fixtures and equipment, which are not fixtures or equipment of the Premises and rightfully belong to RCL Services pursuant to the Lease.

14.     Since entering into the Lease agreement, Rieder Noram, Inc. has become a rival business competitor to RCL Services.

15.     On or about May 31, 2024, Rieder Noram, Inc. sent notice to its business partners stating, *inter alia*,

> Rieder has opened up the network for fabrications services to reflect the growth and the complexity of future projects. In the new setup all Hardware and related services will be purchased by RNA as RNA will be the sole entity selling to the US market. ***RCL as an entity is closing its operation by the end of May and from 31st of May no purchase orders can be issued by RCL or will be processed. All open orders will be transferred to RNA and will be executed by RNA.*** (Emphasis added).

A copy of the notice is attached hereto as Exhibit C.

16.      Centerline was not provided with Exhibit C.

17.      Centerline is unable to make a written demand to RCL Services to take suitable action because Rieder Noram, Inc. has refused to schedule and participate in a shareholder meeting, therefore, making the demand requirement futile as Rieder Noram, Inc. owns and controls RNA.

18.      Centerline brings this action in the interest of RCL Services in order to enforce RCL Services' rights under the Lease and to continue to operate as a business entity because, due to recalcitrant board members, RCL Services has not taken action itself to protect the rights of RCL Services and all its members.

## COUNT I – WRONGFUL EVICTION

19.      Realleges and incorporates by reference as if fully set forth hereat Paragraphs 1 through 18 of Plaintiff's Complaint.

20.      On or about June 2024, without prior notice, RNA changed the locks to the Premises, thereby wrongfully denying RCL Services' access to the Premises and evicting RCL Services in violation of the Lease and Wisconsin law.

21.      RCL Services had lawfully operated its business and complied with all of its obligations under the Lease up until June 2024.

22.      Pursuant to Wis. Stat. § 704.17, a landlord is required to provide a tenant with notice and an opportunity to cure prior to eviction.

23.      Section 12.2 of the Lease provides that RNA may evict RCL Services only in the event of Default by Tenant as per the terms outlined in Section 12.1.

24.      RCL Services has complied with its obligations under the Lease.

25.     Additionally, Section 12.2 of the Lease states, *inter alia*: "if an Event of Default occurs, then whether or not Landlord terminates this Lease, Landlord may elect to re-enter or take possession **pursuant to legal proceedings or pursuant to any notice provided for by law**. (Emphasis added).

26.     No such notice was ever given to RCL Services of potential breaches, nor was RCL Services given an opportunity to cure said breaches in accordance with the Lease and Wisconsin law.

27.     RNA has not notified RCL Services that RCL Services is in default under the Lease.

28.     By wrongfully evicting RCL Services from the Premises and preventing RCL Services from accessing its trade fixtures and equipment, RNA has denied RCL Services access to the Premises and effectively shut down RCL Services' business operations.

29.     Accordingly, RNA has wrongfully evicted RCL Services in violation of both the Lease and Wisconsin law.

30.     RCL Services has not defaulted under the Lease and has fully met its obligations throughout.

31.     Accordingly, RCL Services has a clearly ascertainable right to access the Premises and to RCL Services' trade fixtures and equipment, and RNA has no right to prevent such access.

32.     The continued wrongful deprivation of access to the Premises and to the trade fixtures and equipment prevents RCL Services from maintaining its business operations, will lead to the failure to meet ongoing contractual obligations and may cause harm to RCL Services and its members business reputation.

33.    RCL Services is irreparably harmed unless RNA is enjoined by this Court.

34.    Additionally, the wrongful deprivation of RCL Services' rights of use and access of the Premises is an ongoing violation.

35.    RCL Services is entitled to a temporary restraining order and preliminary injunctive relief by virtue of the threatened and ongoing violations to RCL Services' rights.

36.    RCL Services has no adequate remedy at law because RNA resorted to self help and locked RCL Services out of the Premises, denied RCL Services access to RCL Services' trade fixtures and equipment, and is working on behalf of Rieder Noram, Inc. in order to stifle RCL Services' ability to operate its business and drive it towards bankruptcy as evidenced by the May 31, 2024 letter (Exhibit C).

37.    Money damages will not sufficiently address the harm if RCL Services is unable to continue operating as a business and continually be deprived of access to the Premises and its trade fixtures and equipment.

38.    Furthermore, long standing Wisconsin law has held that even in cases where monetary damages are available, courts may still grant an injunction if they are insufficient to address the harm caused. *Muscoda Bridge Co. v. Worden-Allen Co.*, 196 Wis. 76 (1928).

39.    It is necessary to preserve the status quo of RCL Services having a right to access and use the Premises and its trade fixtures and equipment, and to continue operating its business.

40.    RCL Services is likely to succeed on the merits of its claims as RNA has no right to prevent RCL Services from access, as RNA has not complied with the Lease or Wisconsin law in evicting RCL Services and has no right to retain RCL Services' trade fixtures and equipment.

WHEREFORE, Plaintiff, Centerline Architectural Supply, LLC, as a member of and on behalf of Involuntary Plaintiff, RCL Services, LLC, respectfully requests the Court grant an order in its favor and against Defendant, Defendant RNA Real Estate, LLC, as follows:

(a)     Declaring that RCL Services, LLC is entitled to immediate, unfettered access of the Premises;

(b)     Declaring that RCL Services, LLC is entitled to immediate, unfettered access to its trade fixtures and equipment;

(c)     Entering a temporary restraining order against RNA Real Estate, LLC prohibiting it from preventing RCL Services, LLC's access to the Premises and without proper process as required by law;

(d)     Entering a temporary restraining order against RNA Real Estate, LLC prohibiting it from preventing RCL Services, LLC's access to its trade fixtures and equipment;

(e)     Entering a preliminary and permanent injunction against RNA Real Estate, LLC from moving to evict RCL Services, LLC through self-help and not by the procedures required by Wisconsin law or the Lease; and

(f)     Granting any other relief this Court deems equitable and just.

DATED this 28th day of June 2024.

**WELD RILEY, S.C.**
Attorneys for Plaintiff, Centerline Architectural Supply, LLC


BY:  Electronically signed by Matthew S. Mayer
MATTHEW S. MAYER
State Bar No. 1001237
EVAN M. MAYER
State Bar No. 1122526

ADDRESS:
500 Third Street, Suite 800
P.O. Box 479
Wausau, WI 54402-0479
715.845.8234 – telephone
715.848.1085 – facsimile
mmayer@weldriley.com



**EXHIBIT A**

*Execution Version*

LEASE

BY AND BETWEEN

RNA REAL ESTATE LLC

AND

RCL SERVICES LLC

## TABLE OF CONTENTS

ARTICLE I - Description of Leased Premises

      Section 1.1 - Leased Premises
      Section 1.2 - Term

ARTICLE II - Rent

      Section 2.1 – Basic Rent
      Section 2.2 - Real Property Taxes
      Section 2.3 - Payment in Installments
      Section 2.4 - Personal Property Taxes
      Section 2.5 - No Notice and No Setoff
      Section 2.6 - Place of Payment
      Section 2.7 - Rent to be Net
      Section 2.8 - Late Charges
      Section 2.9 - Additional Rent

ARTICLE III - Use

      Section 3.1 - Use of Leased Premises
      Section 3.2 - Unlawful Purpose
      Section 3.3 - Compliance with Laws and Regulations
      Section 3.4 - Rubbish and Vermin
      Section 3.5 - Hazardous Waste

ARTICLE IV - Landlord's Covenants

ARTICLE V - Condition, Alteration and Repairs

      Section 5.1 - Representation
      Section 5.2 - Repairs
      Section 5.3 - Improvements by Tenant
      Section 5.4 - Liens
      Section 5.5 - Landlord's Liability

ARTICLE VI - Utilities

ARTICLE VII - Insurance

      Section 7.1 - Fire and Extended Coverage
      Section 7.2 - General Liability Insurance

- ii -

60967114 v10

Section 7.3 - Insurance
Section 7.4 - Release of Subrogation
Section 7.5 - Certificates of Insurance
Section 7.6 - Qualification of Insurers
Section 7.7 - Indemnification
Section 7.8 - Landlord's Liability

ARTICLE VIII - Destruction and Condemnation

Section 8.1 - Partial Damage
Section 8.2 - Destruction
Section 8.3 - Taking of All
Section 8.4 - Taking of Less Than All

ARTICLE IX - Waiver of Priority in Relationship of the Parties

Section 9.1 - Subordination
Section 9.2 - Statement of Defaults
Section 9.3 - No Joint Venture

ARTICLE X - Access and Easements

Section 10.1 - Access by Landlord
Section 10.2 - Utility Easements

ARTICLE XI - Assignment and Subleasing

ARTICLE XII - Default by Tenant

Section 12.1 - Default
Section 12.2 - Landlord's Remedies
Section 12.3 - Non-Waiver
Section 12.4 - Deferred Payments
Section 12.5 - Provisions Not Exclusive
Section 12.6 - Attorneys' Fees

ARTICLE XIII - Termination and Surrender

Section 13.1 - Condition of Leased Premises
Section 13.2 - Holding Over

60967114 v10

- iii -

ARTICLE XIV - Concluding Provisions

    Section 14.1 - Amendments
    Section 14.2 - Joint Effort
    Section 14.3 - Captions
    Section 14.4 - Notice
    Section 14.5 - Notice of Lease
    Section 14.6 - Counterparts
    Section 14.7 - Partial Invalidity
    Section 14.8 - Brokers
    Section 14.9 - Wisconsin Law
    Section 14.10 - Persons and Property Bound
    Section 14.91 – Waiver of Jury Trial
    Section 14.10 – Waiver of Prejudgment Remedy
    Section 14.11 – Successors
    Section 14.12 - Force Majeure
    Section 14.13 - Entire Agreement

EXHIBIT A - Description of Leased Premises

## LEASE AGREEMENT

THIS LEASE AGREEMENT (this "**Lease**") is between RNA REAL ESTATE LLC, a Delaware limited liability company with a mailing address of 1100 Barnett Road, Ladysmith, Wisconsin 54848 ("**Landlord**"), and RCL SERVICES, LLC, a Delaware limited liability company with an address at 1100 Barnett Road, Ladysmith, Wisconsin 54848 ("**Tenant**").

IT IS AGREED:

## ARTICLE I

### Description of Leased Premises

Section 1.1 - Leased Premises. Landlord hereby leases to Tenant a certain piece or parcel of land known as 1100 Barnett Road, Ladysmith, Wisconsin, more fully bounded and described on **Exhibit A**, together with any and all improvements, appurtenances, rights, privileges and easements benefiting, belonging or pertaining thereto and any right, title and interest of Landlord in and to any land lying in the bed of any street, road or highway to the center line thereof in front of or adjoining said parcel of land ("**Leased Premises**"). In this Lease, the building located on the Leased Premises is sometimes referred to as the "**Building**."

Notwithstanding the foregoing or anything contained herein to the contrary, Tenant hereby agrees and acknowledges that Landlord licenses that certain portion of the Leased Premises being approximately Seventy-Five Thousand (75,000) square feet and being the so-called office area of the Leased Premises to Rieder Noram, Inc. (the "**Licensee**") pursuant to that certain License Agreement dated as of January 1, 2022.

Section 1.2 - Term. The term of this Lease shall be for a period of ten (10) years (the "**Term**"). It shall commence at 12:01 AM on January 1, 2022 (the "**Commencement Date**") and shall terminate at 11:59 PM on December 31, 2032, unless sooner terminated under the terms of this Lease.

## ARTICLE II

### Rent

Section 2.1 – Basic Rent. The basic rent for the entire Term of this Lease shall be Seventy-Eight Thousand Four Hundred Twenty Dollars ($78,420.00) per year (the "**Basic Rent**"). This Basic Rent is to be paid monthly, in advance, on the first day of each calendar month during the Term hereof, in monthly installments of Six Thousand Five Hundred Thirty-Five Dollars ($6,535.00). The total amount to be paid by Tenant under this Lease is Seven Hundred Eighty-Four Thousand Three Hundred Dollars ($784,200). Tenant shall be responsible for paying such amount in full even upon the earlier termination of this Lease.

60967114 v10

— v —

Notwithstanding the foregoing, the amount of the Basic Rent shall be subject to adjustment on the second anniversary of the Commencement Date, and every second anniversary thereafter during the Term, by an amount equal to the product obtained by multiplying (i) the Basic Rent for the prior lease year by (ii) the percentage increase in the Price Index (as hereinafter defined) from the month which is two (2) months prior to the Commencement Date through the calendar month which is two (2) months immediately preceding the applicable Adjustment Date (as hereinafter defined). The first "**Adjustment Date**" shall be the first day of the third lease year of the Term, and the first day of each successive twenty-four (24) month period thereafter. Basic Rent for each successive twenty-four (24) month period shall never be less than one hundred three (103%) percent of the Basic Rent for the immediately prior twenty-four (24) month period even if the Price Index does not increase by such amount. The term "**Price Index**" used herein shall mean the percentage change in the Consumer Price Index for All Urban Consumers, all Cities, 1982-84 = 100, published by the United States Department of Labor (or if such department shall cease to publish such index, another index reasonably designated by Landlord) as most recently published prior to the applicable comparison dates.

Section 2.2 - Real Property Taxes. In addition to the Basic Rent payable under Section 2.1, Tenant shall pay all real property taxes assessed and levied against the Leased Premises and the Building thereon, including any special assessments levied against the Leased Premises and Building during the Term of this Lease ("**Real Property Taxes**"). Real Property Taxes for the tax years during which the Term of this Lease commences and terminates shall be prorated where applicable. Real Property Taxes as aforesaid shall be paid in full as Additional Rent (hereinafter defined) within thirty (30) days after demand therefor by Landlord. The tax bill submitted by Landlord to Tenant shall be sufficient evidence of the amount of the taxes assessed or levied against the parcel of real property to which such bill relates. At Landlord's option, Tenant shall pay Real Property Taxes monthly, in advance, together with Basic Rent, in an amount equal to one-twelfth (1/12) of Landlord's estimate of annual Real Property Taxes. If Landlord requires monthly estimated payments for Real Property Taxes, then at the end of each Lease Year Landlord shall provide Tenant with a statement of the Real Property Taxes due for the preceding Lease Year together with an estimate for the next Lease Year. Any deficiency in Tenant's monthly payments shall be due and payable within thirty (30) days of receipt of Landlord's statement. Any excess shall be credited by Landlord to the next estimated payment for Real Property Taxes due from Tenant. If any governmental taxing authority, acting under any present or future law, ordinance or regulations, shall levy, assess or impose a tax, excise or assessment (other than an income or franchise tax) upon or against or in anyway related to the land or buildings referred to in this Section, either by way of substitution for or in addition to any existing tax on land and buildings or otherwise, the tax, excise or assessment shall be deemed Real Property Taxes, subject to the provisions of this Section.

Section 2.3 - Payment in Installments. If any tax or special assessment are payable in installments, Tenant may pay such taxes or special assessments in such installments, provided that Tenant shall make all such payments falling due during the Term of this Lease or any

60967114 v10

– 6 –

extension thereof when due and shall pay all interest imposed resulting from such installment payments. If Tenant elects to pay taxes or special assessments in installments, Landlord agrees to execute whatever documents are necessary to effect installment payments.

Section 2.4 - Personal Property Taxes. In addition to the Basic Rent payable under Section 2.1, Tenant shall pay all personal property taxes assessed and levied against its personal property, including trade fixtures and inventory, on the Leased Premises. In the event that the taxes provided for under this Section are billed to Landlord, these taxes shall be paid in full as Additional Rent within ten (10) days after demand therefor by Landlord. The tax bill submitted by Landlord to Tenant shall be sufficient evidence of the amount of the taxes assessed or levied against the personal property to which such bill relates.

Section 2.5 - No Notice and No Setoff. Tenant shall make all payments or Basic Rent, Additional Rent, and any other payments provided for in this Lease without notice, demand, set-off or counterclaim of any kind whatsoever, including money judgments, except that if this Lease requires Tenant to make a particular payment only after notice from Landlord, Tenant shall be entitled to such notice.

Section 2.6 - Place of Payment. Payment of Basic Rent and Additional Rent shall be made to Landlord at the address appearing at the end of this Lease, or to such other person, legal entity or address as Landlord shall designate by written notice to Tenant.

Section 2.7 - Rent to Be Net. It is the purpose and intent of Landlord and Tenant that the Basic Rent shall be net to Landlord so that this Lease shall yield, net to Landlord, the Basic Rent specified in Section 2.1 hereof, during the Term of this Lease.

Section 2.8 - Late Charges. If the Basic Rent for any month is not paid by the tenth day of said month, Tenant agrees to pay a late charge of One Hundred Dollars ($100.00) to Landlord. This late charge shall be paid on the first day of the next calendar month.

Section 2.9 - Additional Rent. Any and all payments payable by Tenant under this Lease, other than Basic Rent, shall be deemed additional rent (**"Additional Rent"**), and Landlord reserves the same rights and remedies against Tenant for default in making any such payments as Landlord shall have for default in the payment of Basic Rent, including, but not limited to, the right to seek and recover such payments as rent under any applicable provisions of the United States Bankruptcy Code.

60967114 v10

ARTICLE III

Use

**Section 3.1 - Use of Leased Premises**.  Tenant covenants and agrees that during the Term of this Lease, the Leased Premises shall only be used and occupied for any use permitted under applicable state, federal and local laws, ordinances and regulations.  Tenant will not do or suffer any waste or damage, disfigurement or injury to any portion of the Leased Premises.

**Section 3.2 - Unlawful Purpose**.  Tenant will not use or allow the Leased Premises or any part thereof to be used or occupied for any unlawful purpose or in violation of any Certificate of Occupancy or certificate of compliance covering the use of the Leased Premises or any part thereof, or in violation of any permit or license connected with the use of the Leased Premises or any part thereof, and will not suffer any act to be done or any condition to exist on the Leased Premises or any part thereof or any article to be brought thereon which may be dangerous (unless safeguarded as required by law) or which may, in law, constitute a nuisance, public or private, or which may make void or voidable any insurance then in force with respect thereto.

**Section 3.3 - Compliance With Laws and Regulations**.  Throughout the Term of this Lease, Tenant, at its sole cost and expense, will promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of all Federal, State and municipal governments, departments, commissions, boards and officers and all orders, rules and regulations of the National Board of Fire Underwriters, the local Board of Fire Underwriters or any other body or bodies exercising similar functions, and with the requirements of all public liability, fire, and other policies of insurance at any time in force with respect to the Leased Premises, foreseen or unforeseen, ordinary as well as extraordinary, which may be applicable to the Leased Premises whether or not such law, ordinance, order, rule, regulation or requirement shall interfere with the use and enjoyment of the Leased Premises.

**Section 3.4 - Rubbish and Vermin**.  Tenant agrees to keep all rubbish in closed containers and to keep the areas to the rear, front and sides of the Leased Premises free from boxes, cartons, and rubbish.  Tenant further agrees to keep the Leased Premises free and clear of all vermin.

**Section 3.5 - Hazardous Waste**.  Landlord hereby acknowledges that Tenant, as part of Tenant's business, may handle, store, and use petroleum products, paint and regulated, toxic and hazardous materials (**"Hazardous Materials"**), and as a result of such handling, storage and use, Tenant may produce regulated, toxic and hazardous waste (**"Hazardous Waste"**) on the Leased Premises.  Tenant agrees to comply with all federal, state and local laws and regulations regarding the generation, treatment, storage, disposal and transportation of petroleum products; regulated materials; hazardous materials and waste; and toxic materials and waste.  In the event Tenant disposes or otherwise spills any Hazardous Materials or Hazardous Waste on the Leased Premises (**"Spill"**), it shall be Tenant's responsibility to clean up and remove such Spill in accordance with all applicable federal, state and local laws and regulations.  Tenant shall

60967114 v10

- 8 -

indemnify and hold Landlord harmless from all losses and damages arising out of any Spill and its use, handling, storage and disposal of Hazardous Materials and Hazardous Wastes and including, without limitation, all injuries to Landlord and third parties, including death; all damage to personal property owned by Landlord and others; all damage to real property owned by Landlord or others; all costs and expenses incurred by Landlord to contain and remove any contamination to the environment and all costs and expenses incurred by Landlord, including without limitation court costs and attorney's fees, arising out of any related litigation, administrative proceeding, fine or order against Landlord. Tenant's indemnity, as set forth above, shall survive the termination or expiration of this Lease.

### ARTICLE IV

#### Landlord's Covenants

Tenant shall, upon paying the rent reserved hereunder and observing and performing all of the terms, covenants and conditions on Tenant's part to be observed and performed, peaceably and quietly, have and hold the Leased Premises, without hindrance or molestation by any person or persons lawfully claiming by, through or under Landlord, subject, however, to the terms of this Lease and to any fee mortgage, but it is understood and agreed that this covenant and any and all other covenants of Landlord contained in the Lease shall be binding upon Landlord and Landlord's successors only with respect to breaches occurring during Landlord's and Landlord's successors' respective ownership of Landlord's interest hereunder.

### ARTICLE V

#### Condition, Alteration and Repairs

Section 5.1 - Representation. Tenant has inspected the Leased Premises and is thoroughly acquainted with its condition. Tenant agrees to take the same "as is" and acknowledges that the taking of possession of the Leased Premises by Tenant shall be conclusive evidence that the Leased Premises were in satisfactory condition at the time such possession was taken. The parties hereby agree that Landlord or Landlord's agents have neither made nor has Tenant relied upon any representations, warrantees, either expressed or implied, or promises with respect to the physical condition of the Building, the land upon which it is erected or the Leased Premises, the rents, leases, expense of operation or any other matter or thing affecting or related to the Leased Premises except as herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this Lease.

Section 5.2 - Repairs. Tenant, at its own expense, shall keep the Leased Premises (including all improvements that may from time to time be made thereon) neat and clean, and in good repair, order and condition and make all necessary repairs thereto, interior and exterior, structural and non-structural, ordinary and extraordinary, and foreseen and unforeseen, including,

60967114 v10

– 9 –

without limitation, to the foundation, plumbing, roof, parking areas, and the mechanical systems serving the Leased Premises. When used in this Article, the term "repairs" shall include all necessary replacements and renewals. All repairs made by Tenant shall be at least equal in quality and class to the original work. Tenant shall also maintain landscaping and other improvements on the Leased Premises in good and tenantable repair.

Section 5.3 - Improvements by Tenant. Tenant shall make no changes, alterations or additions to the exterior or structural portions of the Leased Premises without the prior written permission of Landlord, which permission shall not be unreasonably withheld or delayed.

Section 5.4 - Liens. Tenant shall indemnify and save Landlord harmless from any claims for material or labor, or workmen's compensation claims in connection with any repairs or improvements made by Tenant, and Tenant shall have no authority on behalf of Landlord to give anyone the right to place a lien on the Leased Premises or any part thereof, and should any such lien be placed, Tenant shall have the same removed immediately; and upon failure to do so, Landlord may take whatever steps are necessary to have the same removed and the cost thereof shall be paid by Tenant to Landlord as Additional Rent.

## ARTICLE VI

### Utilities

Tenant shall pay all charges for utilities, including but not limited to gas, heat, water, electricity, power and telephone or other communications service used, rented or supplied upon or in connection with the Leased Premises and shall indemnify Landlord against said liability or damages on such accounts. Tenant shall also arrange for and pay all trash removal costs.

## ARTICLE VII

### Insurance

Section 7.1 - Fire and Extended Coverage. Tenant understands that any fire and extended coverage insurance maintained by Landlord on the Leased Premises is not maintained for the benefit of Tenant. If Tenant wishes fire and extended coverage insurance on Tenant's personal property and leasehold improvements situated on the Leased Premises, Tenant agrees to purchase the same at its own cost and expense.

Section 7.2 - General Liability Insurance. At all times subsequent to the Commencement Date of this Lease and during its full term, Tenant shall keep the Leased Premises insured at its sole cost and expense against claims for personal injury or property damage under a policy of commercial general liability insurance with a combined single limit of at least One Million Dollars ($1,000,000) for bodily injury, personal injury and property damage, containing broad

60967114 v10

- 10 -

form contractual liability coverage, and with aggregate limits applying per location. Such policy shall name Tenant and Landlord as the insureds.

Section 7.3 - Insurance. Tenant shall also pay to Landlord as Additional Rent the total cost of the fire and extended coverage maintained by Landlord on the Building. The cost of such insurance shall be paid in full as Additional Rent within ten (10) days after demand therefor by Landlord. An insurance bill submitted by Landlord to Tenant shall be sufficient evidence of the amount of such insurance premiums.

Section 7.4 - Release of Subrogation.

(a)     Each party covenants and agrees to obtain from its insurance carrier a waiver of subrogation rights against the other, if the same is available, with the provision that if there is any extra cost for the same, the party benefitted by such waiver shall be afforded an opportunity to pay the extra cost and receive the benefit of the waiver; and

(b)     In case of damage to the Leased Premises or to any other property of Landlord or Tenant by any cause within the scope of such insurance, whether such damage be caused by the negligence of either party to this Lease or by any party for whom either party to this Lease may be responsible, neither party to this Lease will look to the other, its agents, employees, invitees, assignees or subtenants for reimbursement to its insurer or to any third party against whom it may have a claim therefor. This subsection shall be effective as to the risks insured against under any particular insurance policy only during such time as such policy shall permit an executory waiver of subrogation without additional premium therefor or if the party benefitted by such waiver pays any additional premium.

Section 7.5 - Certificates of Insurance. At or prior to the Commencement Date of this Lease, Tenant shall provide Landlord with certificates of insurance certifying that all insurance required to be carried by Tenant under the terms of this Lease is in full force and effect. No less than ten (10) days before the expiration of any such insurance policy, Tenant shall furnish Landlord with a new certificate of insurance certifying that such policy has been renewed or replaced.

Section 7.6 - Qualification of Insurers. All insurance provided for in this Lease shall be effected under enforceable policies issued by insurers of recognized responsibility, licensed to do business in the State of Wisconsin.

Section 7.7 - Indemnification. In addition to all other indemnities provided by Tenant in this Lease, Tenant shall defend, indemnify and save harmless Landlord and its agents and employees against and from all liabilities, suits, actions, damages, liability and expense, penalties, claims and costs which may be imposed upon or incurred by or asserted against

60967114 v10                                              – 11 –

Landlord or its agents or employees by reason of, or in any way arising out of, Tenant's use or occupancy of the Leased Premises or any part thereof or occasioned wholly or in part by any act or omission of Tenant, its agents, contractors, employees, servants, invitees, licensees or concessionaires on or about the Land, Building or Leased Premises, including, but not limited to, any of the following:

    (a)   Any work done in, on or about the Leased Premises or any part thereof by or on the request of Tenant, its agents, contractors, sub-contractors, servants, employees, sub-tenants, licensees, invitees or concessionaires;

    (b)   Any negligence or otherwise wrongful act or omission on the part of Tenant or any of its agents, contractors, sub-contractors, servants, employees, sub-tenants, licensees, invitees or concessionaires;

    (c)   Any accident, injury or damage to any person or property occurring in, on or about the Leased Premises or any part thereof, including any common areas of the Building and Land;

    (d)   Any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms, provisions, conditions or limitations contained in this Lease on its part to be performed or complied with.

In case any action or proceeding is brought against Landlord by reason of any such claim, Tenant, upon written notice from Landlord, shall, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Landlord in writing, which approval Landlord shall not unreasonably withhold. Tenant's indemnity, as stated above, shall survive the expiration or other termination of this Lease. Notwithstanding the foregoing, Tenant shall not indemnify Landlord or its agents or employees for any of the above in the event that such damage was due to the gross negligence or willful misconduct of Landlord or its agents or employees.

Section 7.8 - Landlord's Liability.  Landlord shall not be liable for any damage or injury to any person(s), including bodily injury or death, or to any property of Tenant or of any other person from water, rain, snow, ice, sewerage, soot, gas, petroleum or electricity which may leak into or issue or flow from any part of the Leased Premises or of the Building or of the Land, or from the bursting, breaking, obstruction, leaking or any defect of any of the pipes or plumbing appliances or from electric wiring or other fixtures on the Leased Premises, Building or Land or from the condition of the Leased Premises, Building or Land, or from the street or subsurface.

- 12 -

60967114 v10

## ARTICLE VIII

### Destruction and Condemnation

Section 8.1 - Partial Damage. The parties agree that, in case the Building shall be partially damaged by flood, fire, tornado, explosion, windstorm, or by the elements or otherwise at any time during the Term of this Lease, and such damage can be repaired within a period of ninety (90) days, Tenant shall give immediate notice thereof to Landlord, and a proportionate reduction of rent or total reduction of rent payment, payable by Tenant hereunder, shall be allowed Tenant for the time during which such part or parts or whole of the Building may be rendered untenantable or incapable of use or occupancy, and this Lease shall continue in full force and effect, and Landlord shall, at its expense, as speedily as circumstances permit, repair the Leased Premises, if permitted to do so by law, to the extent of the insurance proceeds actually recovered.

Section 8.2 - Destruction. If the Building shall be damaged or destroyed so that it cannot be repaired within ninety (90) days, then, at the option of Landlord and upon written notice to Tenant, this Lease shall terminate and the rent thereafter payable by Tenant thereafter shall abate.

Section 8.3 - Taking of All. If at any time during the Term of this Lease all or materially all of the Leased Premises, or so much of the Leased Premises that the remaining area can no longer properly be used for the purpose for which the same was being used prior to such condemnation, shall be taken by the exercise of the right of condemnation or eminent domain or for any public or quasi-public use under any statute, this Lease shall terminate and expire on the date that Tenant shall be deprived of possession by the taking authority, and the Basic Rent and Additional Rent shall be paid to the date of such taking. In such event, any award received or sum accepted by a compromise disposition or otherwise, on or as a result of such condemnation or taking, shall be distributed to Landlord only. Tenant shall have the right to file a claim for and receive compensation for moving expenses and costs or loss to which Tenant might be put in removing Tenant's equipment and inventory, but not the Leasehold.

Section 8.4 - Taking of Less Than All. If at any time during the Term of this Lease any lesser portion of the Leased Premises than that described in Section 8.3 shall be taken in any eminent domain or condemnation proceeding, then this Lease shall continue and the rent shall be proportionately reduced on a reasonable basis for the remainder of the Term. If Landlord and Tenant cannot agree to the rent thus to be paid, the matter shall be submitted to arbitration with the American Arbitration Association, as then existing, in Ladysmith, Wisconsin and judgment upon the award rendered may be entered in any court of competent jurisdiction. Any condemnation award shall be distributed in the same manner as under Section 8.3.

60967114 v10

## ARTICLE IX

### Waiver of Priority and Relationship of the Parties

Section 9.1 - Subordination. Tenant agrees, if so requested, to waive and surrender any and all right of prior lien which Tenant has or ought to have by virtue of this Lease over any mortgage or mortgages which now are or which shall hereafter be placed upon the Leased Premises, the Building or land or any part thereof and, further, that Tenant shall execute any and all documents necessary to effect such waiver and surrender of rights or priority and hereby agrees that such mortgage or mortgages, if so desired by Landlord, shall take precedence over this Lease and shall be entitled to the same rights and benefits, both at law and in equity, as said mortgage or mortgages would have had if executed, delivered and recorded prior to the lien of this Lease.

Section 9.2 - Statement of Defaults. Tenant shall furnish a written statement upon request of Landlord as to whether or not Tenant deems Landlord to be in default of its obligations pursuant to the terms hereof in any respect. In the event a default is alleged, the notice shall specify the same in detail.

Section 9.3 - No Joint Venture. Notwithstanding any obligation from one party to the other herein, the parties hereto state that they have not created and do not intend to create by this Lease a Joint Venture or Partnership relation between them; it being their sole purpose and intent to create only a Landlord-Tenant relationship.

## ARTICLE X

### Access and Easements

Section 10.1 - Access by Landlord. Tenant will permit Landlord and/or its authorized representatives to enter the Leased Premises at all reasonable times for the following purposes: (1) inspecting the same; (2) making any necessary repairs thereto, and performing any work therein that may be necessary by reason of Tenant's failure to make any such repairs or perform any such work or to commence the same after written notice from Landlord; (3) showing the Building to prospective buyers; or (4) during the last six (6) months of this Lease, showing the Leased Premises to prospective tenants. Nothing herein shall be deemed or construed as a duty upon the part of Landlord to do any such repairs upon Tenant's default in failing to perform the same.

Section 10.2 - Utility Easements. Landlord shall have the right to grant easements on or across the Leased Premises for the installation of utilities, provided that the use of such easements for such purposes does not materially interfere with the operations of Tenant's business.

60967114 v10

– 14 –

## ARTICLE XI

### Assignment and Subleasing

Tenant may not assign this Lease or sublet the Leased Premises without the written permission of Landlord, which will not be unreasonably withheld. Landlord's permission shall be considered to be unreasonably withheld if Landlord refuses to permit Tenant to assign or sublet to a person, partnership or corporation whose financial standing is equal to or better than that of Tenant and will use the Leased Premises for the same purpose as they have been used by Tenant, and if the assignee or subleasee agrees to be bound by the obligations of this Lease. If Landlord permits Tenant to assign or sublet, Tenant shall remain responsible for the performance of all of the terms and conditions of this Lease.

## ARTICLE XII

### Default by Tenant

Section 12.1 - Default. Each of the following shall be an Event of Default by Tenant:

(a)     Failure of Tenant to pay any Basic Rent or Additional Rent or any other payment required hereunder, as and when due, and such failure shall continue for a period of five (5) days after written notice thereof from Landlord to Tenant;

(b)     Neglect or failure by Tenant to perform or comply with any of the agreements, terms, covenants or conditions of this Lease, other than those referred to subsection (a) above, for a period of thirty (30) days after notice from Landlord to Tenant specifying the items in default, or in the case of a default which cannot with due diligence be cured within such thirty (30) day period, failure of Tenant within such thirty (30) day period to commence to cure the same and thereafter to prosecute the curing of such default with due diligence and to completion;

(c)     Any assignment made of the property of Tenant or any guarantor of Tenant's obligations hereunder for the benefit of creditors;

(d)     The appointment of a receiver, trustee or assignee for Tenant or any guarantor with respect to all or substantially all of its assets;

(e)     The declaration of bankruptcy or insolvency by Tenant or any guarantor of Tenant's obligations hereunder;

(f)     The commencement of any bankruptcy proceedings by or against Tenant or any guarantor of Tenant's obligations hereunder, provided, however, the commencement of an involuntary proceeding against Tenant or any Guarantor

60967114 v10

– 15 –

shall not be an Event of Default if dismissed within sixty (60) days following commencement; or

(g)    The abandonment of the Leased Premises by Tenant.

Section 12.2 - Landlord's Remedies.  Upon the occurrence of an Event of Default by Tenant, this Lease shall, at the option of Landlord, terminate and come to an end on the date specified in a notice of cancellation from Landlord to Tenant, and Tenant shall quit and surrender the Leased Premises to Landlord as if the Term hereunder ended by the expiration of the time fixed herein, but Tenant shall remain liable for all sums accruing prior to the termination of this Lease.

If an Event of Default occurs and Landlord elects not to terminate this Lease, then (a) Landlord shall have the immediate right, pursuant to legal process, if any be applicable, to either pay any sums or do any act on behalf of Tenant, in order to cure a default by Tenant, and any sums expended by Landlord, together with interest thereon shall be immediately due and payable by Tenant to Landlord, or (b) Landlord may, pursuant to legal process, if any be applicable, re-enter the Leased Premises and Landlord may remove all persons and property from the Leased Premises and such property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of, Tenant without Landlord being deemed guilty of trespass or becoming liable for any loss or damage which may be occasioned thereby.

In addition, if an Event of Default occurs, then whether or not Landlord terminates this Lease, Landlord may elect to re-enter or take possession pursuant to legal proceedings or pursuant to any notice provided for by law.  Upon Landlord's election to re-enter or to take possession it may make such alterations and repairs as may be necessary in order to relet the Leased Premises or any part thereof, for such term or terms (which may be for a term extending beyond the Lease Term) and at such rentals and upon such other terms and conditions as Landlord in its commercially reasonable discretion may deem advisable and upon each such reletting all rentals received by Landlord from such reletting shall be applied first, to the payment of any indebtedness other than Basic Rent and Additional Rent due hereunder from Tenant to Landlord, second, to the payment of the cost of any such alterations and repairs, third, to the payment of Basic Rent and Additional Rent due and unpaid hereunder, and any amount remaining shall be held by Landlord and applied in payment of future Basic Rent and Additional Rent as the same may become due and payable hereunder.  If such rentals received from such reletting during any month be less than the Basic Rent and Additional Rent to be paid during that month by Tenant hereunder, then Tenant shall pay any such deficiency to Landlord.  Such deficiency shall be calculated and paid monthly.

Landlord may recover from Tenant, from time to time, all damages it may incur by reason of Tenant's default, including the cost of recovering the Leased Premises, reasonable attorneys' fees and the present value, at the time of such termination, of the excess, if any, of the amount of Basic Rent and Additional Rent and charges equivalent to rent reserved in this Lease

- 16 -

above rental value of the Leased Premises for the remainder of the stated Term and all of which amount shall be immediately due and payable from Tenant to Landlord.

Section 12.3 - Non-Waiver. Landlord's failure to act upon breach of any of the covenants of this Lease by Tenant shall in no way constitute a waiver of the rights of Landlord, at any time in the future, to act upon such default; nor shall any such failure to act prevent Landlord from acting in the event of any other or further breach of Tenant's covenants. No provision of this Lease shall be deemed to have been waived unless such waiver be in writing signed by Landlord. No payment by Tenant or receipt by Landlord of a lesser amount than the Basic Rent or Additional Rent then due shall be deemed other than on account of the earliest rent then unpaid, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy provided for in this Lease.

Section 12.4 - Deferred Payments. No delay or delays in the payment of rent reserved in manner or in times stipulated and no failure of Landlord to enforce the provisions of this Lease upon such occasion or in the case of default of any covenant herein contained on the part of Tenant to be performed shall be construed as creating a custom of deferred payments or as a waiver of any of the provisions of this Lease or of Landlord's right to terminate this Lease or otherwise to enforce the provisions thereof.

Section 12.5 - Provisions not Exclusive. Any and all rights and remedies herein created for Landlord shall be cumulative, and the use of one remedy shall not be taken to exclude or waive the right to the use of another. The foregoing rights and remedies are not intended to be exclusive but as additional to all rights and remedies Landlord would otherwise have by law.

Section 12.6 - Attorney's Fees. Tenant shall pay and indemnify Landlord against all legal costs and charges, including reasonable attorney's fees, in obtaining possession of the Leased Premises after a default of Tenant or after Tenant's default in surrendering possession upon the expiration or earlier termination of the Term of this Lease or enforcing any covenant of Tenant herein contained.

ARTICLE XIII

Termination and Surrender

Section 13.1 - Condition of Leased Premises. Upon expiration or other termination of this Lease, Tenant shall:

(a)     Quit and surrender the Leased Premises in as good condition as reasonable use and wear thereof will permit, damage by fire, other casualty and the elements excepted; and

– 17 –

60967114 v10

(b)    Remove from the Leased Premises its goods and effects and those of all persons claiming under Tenant, such goods and effects to include but not be limited to all movable partitions erected by it, appliances, shelving and all other equipment, stock and materials which Tenant may have installed in, or brought upon, the Leased Premises; provided, however, that Tenant shall, at its own expense, repair all damage to the Leased Premises by reason of such removal.

All repairs, alterations, other improvements or installations made to or upon the Leased Premises, which are so attached to the realty that the same will be by law deemed to be a part of the realty, shall be the property of Landlord and remain upon, and be surrendered with, the Leased Premises upon the termination of the Term of this Lease.  Notwithstanding the foregoing, all trade fixtures, lighting fixtures and signs, whether by law deemed to be a part of the realty or not, installed by Tenant at any time or anyone claiming under Tenant, shall remain the property of Tenant or persons claiming under Tenant and may be removed by Tenant or anyone claiming under Tenant at any time or times during the Term of this Lease.

Section 13.2 - Holding Over.  If Tenant remains on the Leased Premises beyond the expiration of this Lease or any renewal or extension thereof, without the written consent of Landlord, such holding over shall be deemed to create a month to month tenancy, subject to all the terms and conditions of this Lease in effect immediately prior to such expiration, except those relating to the Term of this Lease and the Basic Rent payments, which shall increase to one hundred fifty percent (150%) of the rate of Basic Rent in effect on the expiration or termination of the Term.

## ARTICLE XIV

### Concluding Provisions

Section 14.1 - Amendments.  This Agreement may not be amended, modified, altered or changed in any respect whatsoever except by a further agreement in writing, fully executed by each of the parties hereto.

Section 14.2 - Joint Effort.  Preparation of this Agreement has been a joint effort of the parties, and the resulting document shall not be construed more severely against one of the parties than the other.

Section 14.3 - Captions.  The captions of this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope or intent of this Agreement or the intent of any provision hereof.

60967114 v10

– 18 –

Section 14.4 - Notice. Any notice, demand, offer or other written instrument (**"Notice"**) required or permitted to be given, made or sent under this Lease shall be in writing, signed by or on behalf of the party giving such Notice and shall be hand delivered or sent, postage prepaid, by Federal Express or similar overnight delivery (and shall be deemed delivered the day after deposit with such overnight delivery service), addressed as follows:

| TO LANDLORD: | RNA Real Estate LLC<br>1100 Barnett Road<br>Ladysmith, WI 54848<br>Attn: Frank Wagenbauer |
|---|---|
| With a copy to: | Hinckley, Allen & Snyder LLP<br>28 State Street<br>Boston, Massachusetts 02109<br>Attn: Jennifer V. Doran, Esquire.<br>Email: jdoran@hinckleyallen.com |
| TO TENANT: | RCL SERVICES, LLC<br>1100 Barnett Road<br>Ladysmith, WI 54848<br>Attn: Kyle Czekalski |

Either party may change its address set forth in this Section by giving notice to the other party in accordance with this Section.

Section 14.5 - Notice of Lease. This Lease shall not be recorded, but a Notice of Lease may be recorded by either Landlord or Tenant. All governmental charges attributable to the execution or recording of a Notice of Lease shall be paid by the party requiring the recording of the Notice of Lease.

Section 14.6 - Counterparts. This Agreement shall be executed in one or more copies, each of which shall be deemed an original.

Section 14.7 - Partial Invalidity. The invalidity of one or more of the phrases, sentences, clauses, Sections or Articles contained in this Agreement shall not affect the remaining portions so long as the material purposes of this Agreement can be determined and effectuated. If any portion of this Agreement may be interpreted in two or more ways, one of which would render the portion invalid or inconsistent with the rest of this Agreement, it shall be interpreted to render such portion valid or consistent.

Section 14.8 - Brokers. Tenant represents and warrants to Landlord, and Landlord represents and warrants to Tenant, that it has dealt with no broker in connection with this transaction, and Tenant and Landlord agree to defend, indemnify and save the other party

60967114 v10

- 19 -

harmless from and against any and all claims for a commission arising out of this Lease made by anyone asserting a commission due to such party's actions.

Section 14.9 - Wisconsin Law. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Wisconsin.

Section 14.10 - Persons and Property Bound. Tenant hereby agrees that any judgment, decree or award obtained against Landlord or any succeeding owner of Landlord's interest, which is in any manner related to this Lease or the Leased Premises or Tenant's use or occupancy of the Leased Premises, shall be satisfied from Landlord's equity in the Leased Premises to the extent then owned by Landlord or such succeeding owner, and Tenant further agrees to look only to such assets and to no other assets of Landlord or such succeeding owners for satisfaction.

Section 14.9 - Waiver of Jury Trial. Tenant hereby waives trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other.

Section 14.10 – Waiver of Prejudgment Remedy. Tenant does hereby expressly and irrevocably waive any notice and/or hearing which may be required for prejudgment remedies under the Statutes of the State of Wisconsin.

Section 14.11 - Successors. This Agreement shall be binding upon and inure to the benefit of the parties and to their respective heirs, personal representatives, successors and assigns.

Section 14.12 – Force Majeure. Except as otherwise specifically provided elsewhere in this Lease, in any case where Landlord or Tenant is required to do any act, the time for such performance shall be extended by the period of delays caused by fire or other casualty, labor difficulties, shortages of labor, materials or equipment, government regulations or other causes beyond the reasonable control of Landlord or Tenant, as applicable; provided, however, no force majeure event shall delay the timely payment of Basic Rent and Additional Rent as set forth in this Lease.

Section 14.135 - Entire Agreement. This Agreement contains the entire understanding of the parties. There are no oral understandings, terms or conditions, and no party has relied upon any representation, express or implied, not contained in this Agreement.

[Remainder of page intentionally blank;
Signatures on following page.]

60967114 v10                           – 20 –

Signed this 6<u>th</u> day of _March_, 2022.

LANDLORD:

RNA REAL ESTATE LLC

By: RIEBER WOLFGANG
Name:
Its:

TENANT

RCL SERVICES, LLC

By:
Name: KYLE CZEKALSKI
Its:

JON Hughes

60967114 v10

## Exhibit A

## Description of Leased Premises

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LADYSMITH, COUNTY OF RUSK, STATE OF WISCONSIN AND IS DESCRIBED AS FOLLOWS:

Parcel 1:

Lot 2 of Certified Survey Map No. 443, recorded in Volume 3 Certified Survey Maps, Page 155 as Document No. 244338, Except Lot 5 Certified Survey Map No. 494, recorded in Volume 3 Certified Survey Maps, Page 249 as Document No. 251465, located in the Northwest Quarter of the Northwest Quarter of Section 11, Township 34 North, Range 6 West, City of Ladysmith, Rusk County, Wisconsin.

And

The West Half of Lot 11 and Lots 12, 13, 14 and 15 of Block 2, Fairmount Acres Addition, City of Ladysmith, Rusk County, Wisconsin.

Parcel 2:

Lot 5 Certified Survey Map No. 494, recorded in Volume 3 Certified Survey Maps, Page 249 as Document No. 251465, being part of Lot 2 Certified Survey Map No. 443, recorded in Volume 3 Certified Survey Maps, Page 155 as Document No. 244338, located in the Northwest Quarter of the Northwest Quarter of Section 11, Township 34 North, Range 6 West, City of Ladysmith, Rusk County, Wisconsin.

APN: part of 246-03763-0000 and part of 246-03056-0000

– 22 –

EXHIBIT B

**Asset Name**
Striebig Panel Saw
Quadra Tilter Suction Machine
Air Impurities Dust Collection System
Transport Carts
Track Saw Assembly
Misc Tools Machinery (drills, hammers, wrenches, etc…)
Commercial Air Compressor
Large Capacity Pallet Jacks (2)
Komkatsu Forklift
Jib Cranes for panel transport (2)
SCM Sliding Table Saw
Hot Wire Styrofoam Cutter
Jig Table #1
Jig Table #2
Cart #1
Cart #2
Suction Machine
Winch for suction machine
Winch for suction machine #2
CNC Router
Dust Collection for CNC Router
Combilift Forklift
Metal Band Saw
Snowblower
Miscellaneous metal (scrap, etc…)
Framing Hardware (hat channels, screws, misc rails, etc…)
Misc Items (brooms, mops, refrigerators, microwaves)
Household items (plates, silverware, etc…)
Cleaning supplies (paper towels, soap, etc…)
Office supplies (printer paper, notebooks, etc…)
Foam blocks for packing (4' x 12') x 12
Adhesive for formparts (~200 tubes)
Shipping clips & hardware (~20,000 pieces)
Green banding (3 rolls)
Foam rolls (3 rolls)
Foam roll stands (3)
Blue tape (50 rolls)
Banding clips (2 boxes)
Office equipment (i.e. 2 printers, monitors, cords, etc…)
Office furniture (chairs, shelving, tables, etc…)
Ocean containers for dry storage (2 x 40' + 2 x 20')

EXHIBIT C

Rieder

Rieder NORAM Inc.
1100 Barnett Road
Ladysmith
WI 54848
USA

+1 888 573 8069
sales.usa@rieder.cc

Rieder NORAM Inc.
1100 Barnett Road, Ladysmith, WI 54848, USA

**Ladysmith, May 31st of 2024**

**Important Updates for 2024 – Collaboration and Commission Changes**

Dear Valued Business Partners,

As we embark on another exciting year together and Q1 has proven that we are heading into another growth year for 2024. We are grateful for the continued collaboration with our network of professional vendors and service partners.

We hereby want to inform you that Rieder North America has taken an adjusted approach to better serve the US-market with specific needs. Rieder has opened up the network for fabrications services to reflect the growth and the complexity of future projects. In the new setup all Hardware and related services will be purchased by RNA as RNA will be the sole entity selling to the US market. RCL as an entity is closing its operation by the end of May and from 31st of May no purchase orders can be issued by RCL or will be processed. All open orders will be transferred to RNA and will be executed by RNA.

In case of any question on your purchase orders please feel free to contact Frank Wagenbauer or Michael Ogden. We appreciate your business, and we are looking for a strong cooperation in 2024 with Rieder.

With best regards

Frank Wagenbauer

Rieder Noram Inc.