EXHIBIT 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

CENTERLINE ARCHITECTURAL
SUPPLY, LLC, et al.,

    Plaintiffs,

v.

RNA REAL ESTATE, LLC,

    Defendant.

Case No. 24-CV-480

---

# NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1332, 1441, and 1446, Defendant RNA Real Estate, LLC ("RNA") hereby removes to the United States District Court for the Western District of Wisconsin the above-captioned civil action, which was previously filed in Rusk County Circuit Court (State of Wisconsin). In support of removal, RNA states as follows:

1. On June 28, 2024, Plaintiff Centerline Architectural Supply, LLC ("Centerline") filed this action against RNA in Centerline's name and purportedly in the name of "Involuntarily Plaintiff" RCL Services, LLC ("RCL") by filing the Complaint attached hereto as **Exhibit A** in the Rusk County Circuit Court (State of Wisconsin), Case No. 2024CV0066.

2. Centerline's Complaint asserts one cause of action for wrongful eviction. In its Complaint, Centerline seeks injunctive relief for alleged violations of a commercial lease and Wis. Stat. § 704.17, claiming that in June 2024, "RNA changed the locks to the Premises, thereby wrongfully denying RCL Services' access to the Premises and evicting RCL Services . . ." (Compl. ¶ 20.) Centerline further alleges that RNA did so without proper notice and an opportunity to cure. (Compl. ¶ 26.)

3. Centerline advanced these allegations despite RNA having confirmed through

Centerline's counsel in writing on June 12, 2024 that RCL is **not** locked out. Rather, Centerline's concerns with the alleged eviction relate to a larger shareholder dispute between Centerline, on the one hand, and non-party Rieder Noram, Inc. on the other hand, which dispute must be litigated pursuant to an arbitration agreement. Attached hereto as **Exhibit B** is a true and accurate copy of the June 12, 2024 email correspondence from Centerline's counsel admitting that Centerline is not "officially locked out" of the leased premises subject to the eviction action.

4. Nevertheless, on July 11, 2024, having filed with its Complaint a motion seeking an ex parte temporary injunction, the Circuit Court in Rusk County entered an order granting temporary injunction and restricting RNA from, among other things, imposing any restraints on Involuntary Plaintiff RCL's access to and use of the leased premises as well as the supplies, equipment and trade fixtures contained in that premises and, further, restricting RNA from allowing any party other than RCL access to and use of the leased premises.[1] Attached hereto as **Exhibit D** is a true and correct copy of the Circuit Court's July 11, 2024 Order Granting Temporary Injunction.

5. In accordance with 28 U.S.C. §1446(a), a copy of all process, pleadings, and orders that have been served in the Circuit Court of Rusk County by e-filing, as of the date of this notice, is attached as **Exhibit E**.

6. As discussed below, RCL's citizenship is irrelevant for diversity purposes and should be disregarded because it is not a real party in interest. Centerline improperly and

---

[1] Centerline obtained such ex parte relief from the Rusk County Circuit Court despite learning of the undersigned's representation of RNA on July 9, 2024 (two days earlier) and being expressly told in relation to the then pending motion seeking ex parte relief: "We object to any ex parte process over your motion and would want to be heard." Despite this communication, Centerline obtained the temporary injunction without RNA having any opportunity to be heard. Attached hereto as **Exhibit C** is a true and correct copy of the July 9, 2024 email from RNA's counsel to Centerline's counsel regarding the demand to be heard in relation to the ex parte relief sought.

fraudulently joined RCL as a party for the sole purpose of defeating diversity of citizenship in this case to avoid the jurisdiction of this Court.

7. Pursuant to 28 U.S.C. § 1441, RNA removes this matter to the United States District Court for the Western District of Wisconsin, which has original jurisdiction over this case under 28 U.S.C. § 1332(a)(1). Under the statute, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different states . . . ." *See also* 28 U.S.C. §§ 1441(a) and (b).

8. This Notice is timely filed.

## I. REMOVAL IS WARRANTED PURSUANT TO DIVERSITY JURISDICTION.

9. This Court has jurisdiction over the parties because the parties are citizens of different states and, based on Centerline's allegations and the relief it requests, the amount-in-controversy requirement is satisfied. *See* 28 U.S.C. § 1332(a)(1).

### A. Diversity of Citizenship Exists.

10. Diversity exists between Centerline, on the one hand, and RNA, on the other hand, because these entities are citizens of different states. *See Pain Ctr. of SE Indiana LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 458 (7th Cir. 2018) (diversity jurisdiction "requires complete diversity between the parties"); *Howell v. Tribune Ent. Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (complete diversity occurs when "none of the parties on either side of the litigation" are citizens of the state "of which [a] party on the other side is a citizen").

11. In its Complaint, Centerline alleges that it is a Wisconsin limited liability company. (Compl. ¶ 1.) Limited liability companies are deemed to have the citizenship of their members. *See Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 997 (7th Cir. 2007). Upon information

and belief, Centerline has two members: Kyle Czakalski, a resident of Wisconsin, and J.R. Hughes, a resident of Illinois.

12. RNA is a citizen of a state other than Wisconsin and/or Illinois. It is a limited liability company formed under the laws of the state of Delaware. RNA has one member, Rieder Noram, Inc., a Delaware corporation with a registered office in the State of Delaware located at National Registered Agents, Inc., 160 Greentree Dr., Suite 101, Dover, Delaware 19904. (*See* Decl. of Frank Wagenbauer ("Wagenbauer Decl."), attached hereto as **Exhibit F**, at ¶ 2.) RNA, thus, is neither a citizen of Wisconsin nor Illinois.

13. Because Centerline is a citizen of a different state than RNA, complete diversity of citizenship exists between these parties.

14. Centerline's inclusion of RCL, a limited liability company also formed under the laws of Delaware,[2] does not destroy diversity because "[d]iversity of jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." *Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (where joinder of a defendant is fraudulent, "removal will be allowed").

15. Here, Centerline is one of two members of RCL, and Rieder Noram is the other member, each owning 50% of the membership units. (Compl. ¶ 5.) Under the terms of RCL's Operating Agreement, the "daily business and affairs of [RCL] will be managed by or under the direction of a board of managers." (**Exhibit G**, § 3.1(a).) The Board of Managers consists of two

---

[2] Centerline's Complaint asserts that RCL is a Wisconsin limited liability company (Compl. ¶ 2). That is not accurate. RCL's Operating Agreement (**Exhibit G,** ¶ 1.7) and the records of the State of Wisconsin's Department of Financial Institutions reflect that RCL is a foreign entity formed under the laws of Delaware. See https://apps.dfi.wi.gov/apps/CorpSearch/Details.aspx?entityID=R078386&hash=1536839013&searchFunctionID=87860765-6607-4a6a-8f94-914e81a709aa&type=Simple&q=RCL+Services, last accessed on July 14, 2024.

4

Centerline Managers (Messrs. Hughes and Czekalski), two Rieder Noram Managers (Mr. Wagenbauer and Ms. Angelika Rieder), plus Wolfgang Rieder, the Chair, each of whom has one vote. (**Exhibit G**, §§ 3.1(a) - (c).)

16. Only the Board of Managers "has the authority to make decisions, commitments, agreements, understandings and all other matters pertaining to the business of [RCL]." (**Exhibit G**, § 3.2.) Certain actions **require** the approval of the majority of the Managers, including, among other things, "[s]election of legal counsel and accountants for the Company," "commencement of legal proceedings by the Company against any person, and the resolution or settlement of such proceedings." (**Exhibit G**, §§ 3.2(i), (j).)

17. Centerline's claim for eviction (ostensibly on behalf of RCL, which it names as an "Involuntary Plaintiff") asserts that RNA changed the locks to the leased premises, thereby denying RCL access to the premises. (Compl. ¶ 20.)

18. Centerline cannot, however, make that claim on behalf of RCL because it controls only 2 of the 5 votes necessary for the majority vote required to initiate litigation under RCL's Operating Agreement. (**Exhibit G**, §3.2(j).) Centerline's Complaint does not state at all the efforts Centerline took to obtain this desired action from RCL, the particularized reasons why Centerline did not obtain authority to pursue litigation, why it outright failed to make the required effort, and the facts establishing that Centerline has standing to sue derivatively under Delaware law in the name of RCL, which law governs RCL's operations. (**Exhibit G**, §10.1.) As a result, Centerline lacks standing to cause RCL to sue under applicable law. *See* Del. § 18-1002; § 18-1101(i) ("A limited liability company agreement that provides for the application of Delaware law shall be governed by and construed under the laws of the State of Delaware in accordance with its terms.").

19.     In fact, as established above, Centerline, through its counsel, an Illinois attorney named Phil Luetkehans, has acknowledged to counsel for RNA that RNA has not denied RCL access to the premises or locked it out. (**Exhibit B**.)

20.     Rather, Centerline's complaint is that RNA took steps to prevent **Centerline** from accessing the premises after RNA discovered that Centerline was threatening personnel, removing equipment, falsifying information, and improperly taking property from the premises. (Wagenbauer Decl. ¶¶ 6-7.) RNA took action to protect RCL, not to harm it. (Wagenbauer Decl. ¶ 8.)

21.     RCL has no cause of action against RNA under the terms of the lease or the Operating Agreement because it is not locked out and has not been denied access to the premises. Because it is not an appropriate party to the actual dispute between RNA and **Centerline**, RCL's presence in the case as an "Involuntary Plaintiff" should be ignored by the Court for purposes of its diversity analysis. As such, RCL's inclusion by Centerline in the Complaint does not destroy diversity. *See Estates of Briney ex rel. Clay v. Mr. Heater Corp.*, 602 F. Supp. 2d 997, 1001 (W.D. Wis. 2009) (determining that defendant was fraudulently joined where plaintiff could not maintain cause of action "as a matter of law" based on "statutory language" of law under claim brought).

22.     Because RCL has no legally sustainable claim and no right to relief against RNA, the joinder of RCL can only be construed as fraudulent. Ignoring RCL's presence in this case, it is clear that removal is proper. *See Hoosier*, 34 F.3d at 1316.

23.     Indeed the Complaint itself makes clear that this is not a lease dispute over an alleged eviction but is, instead, a dispute between the two members of RCL, which is subject to an arbitration-based dispute resolution clause. (**Exhibit G**, § 7.3.)

24. For example, Centerline attached correspondence from Rieder Noram advising that RCL was closing its operations, all to suggest, falsely, that Rieder Noram was unilaterally taking action to compete with RCL. (Compl. ¶ 15.)

25. Centerline fails to inform the Court, however, that a Centerline Manager of RCL (Mr. Hughes) met with Mr. Rieder and **agreed** that RCL would be dissolved effective May 31, 2024 and RCL would terminate its staff. (Wagenbauer Decl. ¶ 4.)

26. Centerline ultimately reneged on these and other separation terms. But instead of making an arbitration demand under the RCL Operating Agreement (**Exhibit G**, § 7.3), Centerline manufactured a lease dispute in Rusk County, ignored its lack of authority under the Operating Agreement, and used the dispute to pursue substantively baseless injunctive relief aimed at Rieder Noram and RNA, not RCL. The Court can (and should) find that Centerline's inclusion of RCL as an "Involuntary Plaintiff" was fraudulent.

**B.     The Amount In Controversy Is Sufficient to Invoke Federal Jurisdiction.**

27. While RNA denies liability as to any of the asserted claims, the amount in controversy also exceeds the threshold for federal jurisdiction.

28. In its Complaint, Centerline seeks among other things, an injunction restricting RNA from imposing any restraints on RCL's access to and use of the leased premises as well as the supplies, equipment and trade fixtures contained in that premises and, further, restricting RNA from allowing any party other than RCL access to and use of the leased premises. (Compl. p. 7) (seeking "unfettered" access to trade fixtures and equipment regardless of the title to those assets). Where a plaintiff seeks injunctive or declaratory relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Was. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *accord Mailwaukee Mailing, Shipment & Equip., Inc. v. Neopost, Inc.*, 259 F. Supp.

2d 769, 772 (E.D. Wis. 2003). In the Seventh Circuit, the amount in controversy may be valued from either party's perspective – what the plaintiff stands to gain or what it would cost the defendant to comply with the injunction. *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799-800 (7th Cir. 2003). The value of the object of the litigation for purposes of determining the amount in controversy is "the pecuniary result to either party which the judgment would directly produce." *Mailwaukee Mailing*, 259 F. Supp. 2d at 772 (quoting *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 393 (7th Cir. 1979)).

29. Centerline claims that the focus of the Complaint is access to trade fixtures and equipment listed on Exhibit B to the Complaint, which includes saws, suction machines, a dust collection system, an air compressor, a forklift, jib cranes, and a CNC router, among others. (Exhibit B to Compl.) Although Centerline does not attach specific dollar amount to those pieces of equipment, their inclusion demonstrates that the amount in controversy necessary for diversity jurisdiction is established.

30. In addition, Centerline pursued and obtained an unnecessary and baseless ex parte temporary injunction to deliberately interfere with RNA's efforts to protect RCL's business operations and that temporary injunction, if allowed to stand, will result in ongoing business injuries that will also likely exceed the amount in controversy.

31. Importantly, where, as here, injunctive or declaratory relief is sought, "precision is not required" in determining whether the amount-in-controversy requirement is met. *Mailwaukee Mailing*, 259 F. Supp. 2d at 772-73. Further, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Here, based on the statements in Centerline's Complaint, the amount-in-controversy requirement is satisfied.

## II. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.

32. Finally, the procedural requirements of removal are satisfied here. RNA's Notice of Removal was timely filed within the thirty days provided under 28 U.S.C. § 1446(b). The Affidavit of Service filed by Centerline in Rusk County (Dkt. 4, **Exhibit E**) establishes that Centerline served RNA with the Summons and Complaint on July 2, 2024.

33. Because this action was originally brought in Rusk County Circuit Court, venue for purposes of removal is proper in the United States District Court for the Western District of Wisconsin. *See* 28 U.S.C. § 130(b)(1); 28 U.S.C. § 1441(a).

34. In accordance with 28 U.S.C. §1446(d), prompt written notice of this Notice of Removal is being sent to Plaintiff, through its counsel, and will be filed in Rusk County Circuit Court (State of Wisconsin). A copy of the notice being filed is attached as **Exhibit H**.

## CONCLUSION

35. For the foregoing reasons, this Court has original jurisdiction over this action based on the diversity of the parties, pursuant to 28 U.S.C. § 1332. The Court, therefore, may properly exercise jurisdiction over this lawsuit. 28 U.S.C. § 1441(a).

36. RNA files this Notice of Removal without waiving any defenses to the claims asserted, without conceding that Centerline has pleaded claims upon which relief can be granted, without admitting that Centerline is entitled to any relief whatsoever (or that the damages Centerline seeks may be properly sought), and while reserving all other rights, claims, arguments and defenses, including the right to compel arbitration of the underlying dispute at the appropriate time.

37. This Notice of Removal is not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needless increase on the cost of litigation.

WHEREFORE, Defendant RNA Real Estate, LLC hereby removes this case from the Rusk County Circuit Court (State of Wisconsin) to the United States District Court for the Western District of Wisconsin, and further requests that the Court accept this Notice of Removal and assume jurisdiction over this matter for all further proceedings.

Dated this 16th day of July, 2024.

LAFFEY, LEITNER & GOODE LLC
Attorneys for Defendant RNA Real Estate, LLC

*s/ Joseph S. Goode*

Joseph S. Goode
Maura K. Logue
325 E. Chicago Street, Suite 200
Milwaukee, WI 53202
(414) 312-7003
(414) 755-7089 (fax)
jgoode@llgmke.com
mlogue@llgmke.com

HINCKLEY, ALLEN & SNYDER LLP

Christine K. Bush (PHV Admission Forthcoming)
Jennifer Doran (PHV Admission Forthcoming)
100 Westminster Street, Suite 1500
Providence, RI 02903-2319
(401) 274-2000
(401) 277-9600 (fax)
cbush@hinckleyallen.com
jdoran@hinckleyallen.com